**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FLOAT Alaska LLC, *et al.*,[1] | Case No. 26-10075 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 255** |

**DEBTORS' OBJECTION TO BISCHOFF AEROSPACE INC.'S
MOTION TO LIFT THE AUTOMATIC STAY**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby object (this "Objection") to *Bischoff Aerospace Inc.'s Motion to Lift the Automatic Stay* [D.I. 255] (the "Motion") and respectfully state as follows:

**Preliminary Statement**

1.      The Motion must be denied as it is based on a series of mistaken premises that, once corrected, are fatal to Bischoff's argument.  For instance, Bischoff mistakenly asserts that its claims against the Debtors' estates are non-core because they arise under state law.  However, Bischoff has submitted proofs of claim in these cases and the allowance or disallowance of those claims is indisputably a core proceeding under 28 U.S.C. § 157(b).  Bischoff also mistakenly asserts that its fraud claim is non-dischargeable under section 523(a)(2) of the Bankruptcy Code. But, section 523(a)(2) establishes an exception to discharge for *individual* debtors and is thus not applicable to the *corporate* Debtors in these cases.  Thus, Bischoff does not hold a non-dischargeable claim, and even if it did, the deadline to file a non-dischargeability complaint in

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal EIN, are: FLOAT Alaska LLC (3705), Corvus Alaska Holdings Inc. (9732), FLOAT Alaska Holdings LLC (8617), FLOAT Alaska IP LLC (1986), New Pacific Airlines, Inc. (7666), FlyCoin, Inc. (2816), and FLOAT Shuttle Inc. (4269). The Debtors' mailing address is 101 W Mission Blvd, #110-201, Pomona, CA 91766.

57799147.2

these cases has passed. Bischoff further mistakenly assumes that it can recover from the Debtors' estates in excess of its pecuniary loss, which the Debtors concede is $530,000. Yet, if Bischoff prevailed on its fraud claim and a court awarded exemplary or punitive damages, Bischoff's claim for those damages would be subordinated to all general unsecured claims—who will not recover in full in these cases—meaning Bischoff would not receive any additional recovery on account of a damages claim stemming from its fraud allegations.

2.      Even without accounting for the mistaken premises in the Motion, Bischoff has failed to show that "cause " exists under the *Rexene* factors to justify lifting the stay. First, the Debtors will suffer considerable prejudice if the stay is lifted.  Not only would lifting the stay interfere with the Debtors' administration of these cases and distract key personnel, but litigating Bischoff's alleged fraud claim in Florida would be a colossal waste of both the Debtors' and Bischoff's time and resources because Bischoff cannot recover on a claim beyond its pecuniary loss.  Second, because Bischoff has nothing of substance to gain against the Debtors or their estates by pursuing its Florida action, there is no harm imposed on Bischoff in maintaining the stay. Without any meaningful incremental recovery to be gained from lifting the stay, the merits of Bischoff's fraud claim are of little relevance. Nonetheless, to the extent the Court is inclined to entertain the merits, Bischoff is unlikely to succeed on its fraud claim because, among other things, the Debtors' statements were true and accurate when made and Bischoff did not suffer any harm as a result of relying on the KYC form.  For these reasons, the Motion should be denied.

### Relevant Background

3.      The Debtors dispute all allegations of fraud set forth in the Motion.

4.      On January 26, 2026 (the "Petition Date"), the Debtors each filed a voluntary petition to commence these chapter 11 cases.

2

57799147.2

5.      On the Petition Date, and in violation of the automatic stay, Bischoff filed a complaint (the "Florida Complaint") in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, purportedly commencing an action against Debtors New Pacific Airlines, Inc. and FLOAT Alaska Holdings LLC, Josh Jones, Tom Hsieh and Joel Rhodes.  The Florida Complaint has not been served.

6.      The Court set April 6, 2026, at 11:59 p.m. (prevailing Eastern time) as the deadline to file a proof of claim in respect of any prepetition claim against the Debtors (the "Bar Date"). *See Order (I) Establishing Certain Bar Dates for Filing Prepetition Claims and Administrative Expense Claims, and (II) Granting Related Relief, Including Notice and Filing Procedures* [D.I. 152]; *see also Amended Notice of Bar Dates for Filing Prepetition Claims and Administrative Expense Claims* [D.I. 156].

7.      On April 6, 2026, Bischoff timely filed proofs of claim, Claim Nos. 95 and 96 (together, the "Proof of Claim"), on the claims register maintained by Debtors' claims and noticing agent, Stretto, Inc.  Claim Nos. 95 and 96 are identical other than the Debtor entity that the claim is asserted against.  Copies of Claim Nos. 95 and 96 are attached hereto as **Exhibits A** and **B**.

8.      The Proof of Claim alleges that Bischoff provided repair services for one of the Debtors' engines in exchange for an upfront payment of $200,000 and a promise to pay $530,000 in the future, and that Debtors failed to pay the $530,000.  The Debtors do not dispute that Bischoff provided the services and that it has a right to payment of $530,000 for the services.  The Debtors and Bischoff diverge over the nature of that amount, and the Debtors maintain that Bischoff has a general unsecured claim in these cases.[2]

---

[2]   More specifically, the Debtors dispute that Bischoff holds a secured claim and believe the Proof of Claim must be reclassified as a general unsecured claim. This issue, however, is unrelated to the relief requested in the Motion.

57799147.2

9.      The Proof of Claim does not assert a claim for Bischoff's other theories of recovery against the Debtors that are the subject of its Florida Complaint, including Bischoff's count for fraudulent misrepresentation.  Bischoff does not assert in the Proof of Claim any entitlement to other damages, exemplary, punitive, treble or otherwise.  Indeed, the Proof of Claim states that "Bischoff Aerospace is entitled to allowance of its claim in the amount of $530,000 as expressly claimed, calculated as the invoiced amount net of the $200,000 deposit[.]"

10.      Instead, the Proof of Claim states Bischoff's belief that the Debtors "made a series of false and misleading statements in order to induce Bischoff to extend credit . . ." and that "[b]ecause the Debtors procured credit through fraud, this claim is not dischargeable". These statements appear in a section of the Proof of Claim entitled "Non-Dischargeable".

11.      The deadline to file a non-dischargeability complaint in these cases passed on April 27, 2026.  Bischoff did not timely file a complaint seeking to declare its debt to be non-dischargeable and, in any event, dischargeability is irrelevant to these corporate Debtors.

12.      Bischoff has separately filed an adversary complaint against Jones Holding LLC and Josh Jones, seeking equitable subordination of their claims against the Debtors' estates. Adv. Proc. No. 26-50235 (CTG) [Adv. D.I. 1] (the "Subordination Complaint"). The Subordination Complaint is based on the same facts and circumstances as Bischoff's Florida Complaint.  Bischoff acknowledges this in the Subordination Complaint.  *See* Subordination Complaint ¶ 12 ("The facts in this case substantially overlap with those in the fraud claims that Bischoff Aerospace has asserted and pursued in the Circuit Court of the [E]leventh Judicial Circuit in and for Miami-Dade County, Florida").

4

**Objection**

**I.**     **The Motion is predicated on several mistaken premises that, once corrected, are fatal to the Motion.**

13.     The Motion is based on four key mistaken premises that, once corrected, are fatal to the Motion's merits argument.

14.     *First*, Bischoff mistakenly asserts that its claims are non-core because they arise under state law. *See* Motion ¶ 21 ("Bischoff Aerospace's Florida Case is not a core proceeding . . ."). Bischoff is wrong—its claims against the Debtors are core claims.  Bischoff submitted a proof of claim against the Debtors' estates in these chapter 11 cases, thereby submitting to this Court's core jurisdiction for resolution of the claim. *See In re Global Power Equip. Grp. Inc.*, 418 B.R. 833, 849 (Bankr. D. Del. 2009) ("Filing a proof of claim in a United States bankruptcy court constitutes submission to the bankruptcy court's jurisdiction for the resolution of the claim and counterclaims.").  The allowance or disallowance of Bischoff's claims against the Debtors' estates is a core proceeding under the plain text of 28 U.S.C. § 157(b)(2)(B), which provides that core proceedings include "allowance or disallowance of claims against the estate".  *See Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 643 (D. Del. 2011) ("[A] pre-petition state law claim may transform into a core proceeding if the creditor files a proof of claim with the bankruptcy court."); *see also Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (finding the voluntary act of filing a proof of claim "triggers the process of 'allowance and disallowance of claims,' thereby subjecting [the claimant] to the bankruptcy court's equitable power").  It is unclear if Bischoff attempts to avoid this conclusion by not asserting its fraud claim in its Proof of Claim.  If that is Bischoff's aim, then Bischoff's fraud claim is now time-barred and disallowed in these cases as a result of Bischoff's failure to assert it by the Bar Date.

5

57799147.2

15. *Second*, Bischoff mistakenly asserts that its fraud claim is non-dischargeable under section 523(a)(2) of the Bankruptcy Code. *See* Motion ¶ 22. Bischoff is wrong again. Section 523(a) of the Bankruptcy Code provides "[a] discharge under section 727, 1141, . . . of this title does not discharge an *individual* debtor from any debt . . ." 11 U.S.C. § 523(a) (emphasis added). This provision is not applicable to *corporate* debtors. A *corporate* chapter 11 debtor either reorganizes and is afforded the "super discharge" provided for in section 1141(d)(1) of the Bankruptcy Code (which discharges all claims other than the False Claims Act of the government or a qui tam relator) or liquidates, in which case the debtor receives no discharge, as provided in section 1141(d)(3)(A). *See In re 741, Inc.*, Adv. Pro. N. 25-01345 (TBM), 2026 WL 1166913, at *9 (Bankr. D. Colo. Apr. 29, 2026) (dismissing an adversary proceeding asserting non-dischargeability of debt under section 523(a) for failure to state a claim because "[o]n their face, Section 523(a)(2)(A) and (a)(4) simply do not provide a cause of action for claims against standard Chapter 11 corporate debtors"). Thus, Bischoff's claim cannot be declared non-dischargeable under section 523(a)(2) or otherwise.

16. *Third*, even if Bischoff could pursue a non-dischargeability action (it cannot for the reasons stated above), Bischoff missed the deadline to do so. Section 523(c) of the Bankruptcy Code provides, in relevant part, that "the debtor shall be discharged from a debt of a kind specific in paragraph (2) . . . of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and hearing, the court determines such debt to be excepted from discharge . . ." 11 U.S.C. § 523(c)(1). The request must be brought by filing a complaint to commence an adversary proceeding. *See* Fed. R. Bankr. P. 7001(f). Pursuant to Bankruptcy Rule 4007(c), with exceptions not relevant here, "a complaint to determine whether a debt is dischargeable under § 523(c) must be filed within 60 days after the first date set for the § 341(a)

6

57799147.2

meeting of creditors." Fed. R. Bankr. P. 4007(c). The deadline to file a non-dischargeability complaint in these cases was April 27, 2026. *See Notice of Chapter 11 Bankruptcy Case* [D.I. 43] (noting deadline to file a claim under section 523(c)). The deadline cannot now be extended. *See* Fed. R. Bankr. P. 4007(c) (stating that a motion to extend the deadline to file a non-dischargeability complaint must be filed before expiration of the deadline) and 9006(b)(3)(A) (providing that Rule 4007(c)'s deadline may be extended only in accordance with that Rule). Thus, any non-dischargeability claim is irreversibly time-barred.

17.    *Fourth*, Bischoff appears to mistakenly assume that it can recover from the Debtors' estates in excess of its pecuniary loss. As noted above, the Debtors do not dispute that the Debtors owe Bischoff $530,000. But, even if Bischoff prevailed on its fraud claim, and a court awarded exemplary or punitive damages, Bischoff's claim for those damages would be subordinated to all general unsecured claims pursuant to section 726(a)(4) of the Bankruptcy Code. *See* 11 U.S.C. § 726(a)(4) (subordinating "payment of any allowed claim . . . for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such . . . damages are not compensation for actual pecuniary loss suffered by the holder of such claim"). Because general unsecured creditors will not recover in full in these cases, Bischoff's fraud claim—which the Debtors maintain has no merit—would not provide it with any recovery above a pro rata distribution on the $530,000 that the Debtors concede is owed.

**II.    There is no cause to lift the automatic stay for Bischoff to pursue its Florida action.**

18.    Leaving the aforementioned deficiencies aside, Bischoff has not met its burden to show that "cause" exists under the *Rexene* factors: (1) prejudice that would be suffered by the debtors should the stay be lifted; (2) balance of the hardships facing the parties; and (3) probable

success on the merits if the stay is lifted. *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).

19.    The automatic stay is "one of the most fundamental protections granted the debtor under the Bankruptcy Code." *Id.* at 576.  It operates primarily to "stop all creditor collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and [its] creditors, thereby affording the parties and the Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way." *Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999) (emphasis omitted).  The automatic stay is designed to give the debtor a "breathing spell" after the commencement of a chapter 11 case, shielding debtors from litigation in multiple forums at a time when the debtor's personnel should be focused on the restructuring. *See, e.g.*, *Borman v. Raymark Indus.*, 946 F.2d 1031, 1036 (3d Cir. 1991).

20.    Whether "cause" exists pursuant to section 362(d)(1) of the Bankruptcy Code is a decision entrusted to the sound discretion of the bankruptcy court.  *See In re SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) (noting that courts determine what constitutes cause based on the totality of the circumstances and on a case-by-case basis).  Courts in this District generally employ the three-prong balancing test set forth in *In re Rexene Prods. Co.* in determining whether a movant has established cause for relief from stay. 141 B.R. at 576.

21.    Courts also consider other factors to determine whether cause exists to lift the automatic stay, including the degree of interference with the debtor's bankruptcy case. *See, e.g.*, *In re DBSI, Inc.*, 407 B.R. 159, 167 (Bankr. D. Del. 2009) ("Courts also place emphasis on whether lifting the automatic stay will impeded [sic] the orderly administration of the debtor's estate."). "Even slight interference with the administration [of the debtor's estates] may be enough to

57799147.2

preclude relief in the absence of a commensurate benefit." *In re W.R. Grace & Co.*, Case No. 01 01139 (JFK), 2007 WL 1129170, at *2, n.7 (Bankr. D. Del. Apr. 13, 2007).

### A. The Debtors and their estates would suffer significant prejudice if the stay is lifted.

22.     The Debtors will suffer considerable prejudice if the Motion is granted.   The Debtors have limited resources with which to administer their estates and distribute payments to creditors, and are promptly progressing toward confirmation of a plan that maximizes the value of the Debtors' remaining assets, including the Part 121 Certificate, and recovery for creditors.   The Debtors are currently in the process of seeking interim approval of their combined disclosure statement and plan and anticipate a confirmation hearing in mid-June with the plan going effective shortly thereafter.   Permitting Bischoff to pursue its claim outside this Court would distract the Debtors' key personnel at a critical juncture in these cases, deplete the Debtors' limited resources, and interfere with the Debtors' administration of these cases, including confirmation of a chapter 11 plan.   It would also be a waste of time and resources—for both parties—because, as noted above, Bischoff cannot recover on a claim for damages beyond its pecuniary loss of $530,000.   Put simply, nothing of economic substance would be accomplished by Bischoff proceeding with the Florida Complaint against the Debtors—except for a tremendous waste of the parties' time and resources, which is the epitome of prejudice to the Debtors, their estates, and other creditors.

23.     Bischoff's reliance on the  forum selection clause in the General Terms Agreement is also misplaced because "forum selection clauses are unenforceable when the state action falls within the bankruptcy court's core jurisdiction." *Kurz v. EMAK Worldwide, Inc.*, 464 B.R. at 641; *see also In re John Q. Hammons Fall 2006, LLC*, Case No. 16-21142, 2017 WL 4620872, at *7–8 (Bankr. D. Kan. Oct. 13, 2017) (denying creditor's lift stay motion in part because resolution of claims is a core proceeding and the "strong public policy of centralized resolution of claims" in

9

bankruptcy supports not enforcing a forum selection clause). As set forth above, Bischoff's Florida action constitutes a core proceeding because it directly affects the allowance or disallowance of Bischoff's claims against the Debtors' estates and Bischoff's asserted Proof of Claim involves identical legal and factual issues to the Florida Complaint. The *In re TK Holdings, Inc.* and *In re Access Care, Inc.* decisions that Bischoff cites do not hold otherwise. They deal with the debtor or a trustee asserting a state law claim against a non-debtor, not a creditor asserting a claim against the Debtors. The former are non-core (unless asserted as a counterclaim), while the latter are indisputably core.

24.     Bischoff is also wrong when it asserts that any prejudice to the Debtors is minimal because the claim must be resolved before the Debtors can obtain a discharge. *See* Motion ¶ 22. As discussed above, section 523(a)(2) of the Bankruptcy Code is inapplicable to these cases. Moreover, Bischoff missed the April 27, 2026 deadline to file a non-dischargeability complaint and is now irreversibly time-barred from filing one. Making the Debtors defend Bischoff's Florida lawsuit—seemingly brought as a predicate to a non-existent dischargeability action—would be extremely wasteful and prejudicial to the Debtors.

25.     The Debtors would suffer extreme economic prejudice having to defend a lawsuit in Florida that cannot provide Bischoff with any incremental economic recovery or affect the Debtors' right to a discharge.

**B.      The balance of harms weighs against granting the Motion.**

26.     Bischoff has also failed to show that any harm imposed on Bischoff from maintaining the stay "considerably outweighs" the harm that the Debtors would suffer from lifting the stay. As noted above, Bischoff gains nothing of substance against the Debtors or their estates by pursuing an action in Florida and therefore loses nothing of substance if it is stayed from doing so. Moreover, to the extent that any claims resolution is required, Bischoff's claims in the Debtors'

10

57799147.2

bankruptcy cases will be reconciled and resolved well before any resolution in the Florida action could be achieved. The Florida action—arguably filed post-petition in violation of the automatic stay—is at the complaint stage and has yet to be served. By contrast, these chapter 11 cases are moving toward plan confirmation, and the Debtors intend to ask the Court to resolve certain claims, including Bischoff's, in conjunction with confirmation. Accordingly, it is in the best interests of the Debtors, their estates and Bischoff to allow the claims reconciliation process in these cases to play out, particularly because if the Debtors are successful in reclassifying Bischoff's claim to a general unsecured claim, Bischoff will only be entitled to recover a fraction of its $530,000 claim unless it subsequently prevails on its Subordination Complaint.

27. Bischoff's only asserted harms—non-payment for the services provided and delay in reconciling its claim—not only fail to establish the harm necessary for relief from stay and ignore the procedural posture of these cases versus the Florida action, but are also a blatant attempt to circumvent the claim reconciliation process in these chapter 11 cases. If Bischoff's alleged harm were enough to warrant stay relief, then every creditor would be entitled to relief from stay, and the exception would swallow the rule. *Cf. In re Condisco*, 271 B.R. 273, 277 (Bankr. N.D. Ill. 2002) ("The automatic stay almost always delays litigants. That is, after all, its purpose and the reason they call it a 'stay.'").

**C.    Bischoff is unlikely to succeed on the merits of its fraud claim, but the merits are not relevant in any event.**

28. Bischoff's likelihood of success on the merits of its fraud claim is irrelevant because Bischoff cannot recover more than its pecuniary loss of $530,000. As demonstrated above, even if Bischoff were to prevail on its fraud claim, it cannot achieve any meaningful incremental recovery from the Debtors or their estates because the claim would be subordinated. In any event, Bischoff is unlikely to prevail on the merits of its fraud claim because, among other things, the referenced

11

statements from the Debtors' representatives were (i) true and accurate when made and (ii) with respect to the entity that owned the aircraft, Bischoff did not suffer any harm as a result of relying on the KYC form.  Moreover, any allegations that the statements made were intended to enhance parties' positions in these bankruptcy cases are unsubstantiated and wholly inaccurate.

29.    For the foregoing reasons, there is no cause to lift the automatic stay, and the Motion should be denied.

WHEREFORE, the Debtors respectfully request that the Court deny the relief requested in the Motion and grant the Debtors such other and additional relief as the Court deems appropriate under the circumstances.

Dated:  May 6, 2026
        Wilmington, DE

**SAUL EWING LLP**

*/s/ Paige N. Topper*
Paige N. Topper (DE Bar No. 6470)
Nicholas Smargiassi (DE Bar No. 7265)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
Email:  paige.topper@saul.com
        nicholas.smargiassi@saul.com

-and-

Zev M. Shechtman (admitted *pro hac vice*)
1888 Century Park East, Suite 1500
Los Angeles, CA 90067
Telephone: (310) 255-6100
Email:  zev.shechtman@saul.com

*Counsel to the Debtors and Debtors in Possession*

12