**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FLOAT Alaska LLC, *et al.*,[1] | Case No. 26-10075 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 248** |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE COMBINED DISCLOSURE STATEMENT AND PLAN ON AN INTERIM BASIS FOR SOLICITATION PURPOSES ONLY; (II) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE COMBINED DISCLOSURE STATEMENT AND PLAN; (III) APPROVING THE FORM OF BALLOT AND SOLICITATION PACKAGES; (IV) ESTABLISHING THE VOTING RECORD DATE; (V) SCHEDULING A COMBINED HEARING FOR FINAL APPROVAL OF THE ADEQUACY OF DISCLOSURES IN, AND CONFIRMATION OF, THE COMBINED DISCLOSURE STATEMENT AND PLAN; AND (VI) GRANTING RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Regions 3 and 9 ("U.S. Trustee"), files this objection ("Objection") to the *Debtors' Motion for Entry of an Order (I) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Combined Disclosure Statement and Plan; (III) Approving the Form of Ballot and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Disclosures in, and Confirmation of, the Combined Disclosure Statement and*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal EIN, are:  FLOAT Alaska LLC (3705), Corvus Alaska Holdings Inc. (9732), FLOAT Alaska Holdings LLC (8617), FLOAT Alaska IP LLC (1986), New Pacific Airlines, Inc. (7666), FlyCoin, Inc. (2816), and FLOAT Shuttle Inc. (4269). The Debtors' mailing address is 101 W Mission Blvd, 110-201, Pomona, CA 91766.

*Plan; and (VI) Granting Related Relief* (the "Solicitation Motion") [D.I. 248], and in support of the Objection states:

## . PRELIMINARY STATEMENT[2]

1.      First, the Court should not approve the proposed solicitation procedures because the Debtors have created a solicitation process that could generate unnecessary confusion and deny claimants sufficient notice and time to protect their rights. The Debtors propose serving creditors with a solicitation package that informs them that they are in a voting class and can vote their claim, while preserving the Debtors' rights to object to claims and, by extension, eliminating the voting rights of creditors (or reduce the amount of the claim entitled to vote) up to seven days after service of the solicitation package. If the Debtors object to a claim during this seven-day period, that creditor will then be served with a notice (not provided in full to the court) which (i) informs them that their voting rights have been eliminated or reduced and (ii) gives them less than four business days to file a motion for temporary allowance of their respective claims. This confusing process, with an exceedingly short timeframe to protect one's rights, should not be approved.

2.      Second, the Combined Plan should not be confirmed because, among other things, the non-consensual third-party releases render the proposed Combined Plan[3] unconfirmable.  The Plan extinguishes a broad range of direct claims against non-debtor parties held by other non-

---

[2]      In addition to the points raised in this Objection, the U.S. Trustee's counsel has provided additional comments to Debtors' counsel to the Combined Plan, the form of order approving the Combined Plan for solicitation, and the solicitation procedures and related notices which counsel expects will be resolved by agreement. These comments include, but are not limited to, the adequacy of the disclosure contained in the Combined Plan. The U.S. Trustee understands that the Debtors will provide additional disclosure as well as respond to other comments made by the U.S. Trustee. To the extent such comments are not resolved, the U.S. Trustee reserves the right to supplement this Objection or to assert additional objections at the hearing on the Solicitation Motion.

[3]      *Combined Disclosure Statement and Chapter 11 Plan of New Pacific Airlines, Inc. and its Affiliate Debtors* (the "Combined Plan;" D.I. 240).

debtor parties without their affirmative consent, by all creditors who vote to accept or reject the plan and fail to "opt out" of the releases.

3.    As the discussion below demonstrates, neither the Combined Plan nor the Debtors' proposed solicitation procedures should be approved for purposes of solicitation, and the Solicitation Motion should be denied.

## JURISDICTION & STANDING

4.    Under 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District.  This oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See, e.g.*, *In re United Artists Theatre Co. v. Walton*, 315 F.3d 217, 225 (3d Cir. 2003) (holding that United States Trustees "protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings"); *U.S. Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *see also* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. at 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6049 (United States Trustees "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena").

5.    Under 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans and disclosure statements filed in chapter 11 cases, and to file "in connection with hearings under [11 U.S.C. §§ 1125 and 1128] comments with respect to such plans and disclosure statements" whenever the U.S. Trustee considers it to be appropriate.

6.    Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised in this pleading.

**STATEMENT OF FACTS**

7.      On January 26, 2026, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.  On February 11, 2026, the U.S. Trustee appointed an official committee of unsecured creditors. D.I. 57.

8.      The Debtors filed their Combined Plan on April 20, 2026. The Debtor filed the Solicitation Motion on April 21, 2026, which seeks approval of the Combined Plan for purposes of solicitation as well as certain procedures concerning the solicitation of votes on the Plan.

**The Solicitation Procedures**

9.      In the Solicitation Motion, the Debtor requests approval of the "Tabulation Procedures," which are attached as Exhibit 1 to the proposed order approving the Solicitation Motion.

10.      The Tabulation Procedures set May 11, 2026, as the "Record Date" for determining if a creditor is entitled to vote on the Combined Plan. Tabulation Procedures, ¶ A. The Tabulation Procedures further provide that the Debtors shall serve the Solicitation Package, which includes a ballot, on all holders of claims in any voting class by the later of May 15, 2026, or two business days after entry of the order approving the Solicitation Procedures. *Id.*, ¶ C.2.

11.      The Tabulation Procedures provide that a creditor whose claim is subject to a "reduce and allow" objection is entitled to vote their claim in the reduced amount set forth in the objection. *Id.*, ¶ C.3. The Debtors may file "reduce and allow" objections through May 22, 2026 (*i.e.*, up to seven days after the proposed solicitation date). *Id.* Holders of claims subject to a "reduce and allow" objection filed after May 15, 2026, will not receive specific notice that the amount of their claim for voting purposes as of May 15 has been reduced to the reduced amount set forth in the later-filed objection. *Id.*

12.     If the Debtors file an objection to a claim other than a "reduce and allow" objection after May 15 but before May 22, the holder of the claim will no longer be considered a "voting creditor" unless a "Resolution Event" occurs. *Id.* The Debtors propose serving on such creditor "a modified Notice of Non-Voting Status and Opt-In Form to account for the Disputed Claim." *Id.*

13.     A "Resolution Event" is defined as either (a) an order is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code after notice and hearing; (b) an order is entered temporarily allowing the Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and hearing; (c) the Debtors and the holder of the Claim resolve the objection by stipulation and the Claim is allowed in an agreed upon amount; or (d) the pending objection is withdrawn. *Id.*

14.     The proposed order approving the Solicitation Motion sets May 29, 2026 as the deadline for filing motions under Bankruptcy Rule 3018, to temporarily allow the claim for voting purposes. Solicitation Mot., Ex. A ¶ 15. This deadline is not separately set forth in the Tabulation Procedures. The Debtors propose that they and any other party in interest shall have until June 12, 2026, to file an objection to the Rule 3018 motions.

15.     Monday, May 25, 2026, is the Memorial Day holiday.

**Third-Party Releases**

16.     The third-party release provision in the Combined Plan (the "Third-Party Release[s]") states:

> Except as otherwise expressly provided in the [Combined] Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Releasing Parties shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or

unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are or may be based in whole or in part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to the Debtors, including, without limitation, (i) the chapter 11 cases, (ii) the combined Plan and Disclosure Statement, (iii) the subject matter of, or the transaction or events giving rise to, any claim or equity interest that is treated in this Plan, (iv) the business or contractual arrangements between the Debtors and any Released Party, (v) the negotiation, formulation or preparation of this combined Plan and Disclosure Statement, the Plan Supplement, or related agreements, instruments or other documents, (vi) the Sales or their related transaction documents, and the negotiation, formulation or preparation of the Sales and the related transaction documents, and (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties. The foregoing releases shall not extend to acts constituting willful misconduct, bad faith, or gross negligence.

Combined Plan Art. 11.8.

17.    The Combined Plan defines Released Parties as:

collectively, and in each case in its capacity as such: (a) the Debtors and Reorganized NPA; (b) the current managers, directors, officers, authorized persons, and members of management of the Debtors for conduct occurring on and after the Petition Date; (c) the Wind-Down Estates; (d) the Plan Sponsor; (e) the DIP Lender; (f) the Prepetition Lender; (g) the Committee and its members (solely in their capacity as such); and (h) with respect to any Person or Entity in the foregoing clauses (a) through (g), the predecessors, successors and assigns, subsidiaries, members, partners, managers, officers, directors, employees, agents, attorneys, advisors, accountants, financial advisors, investment bankers, consultants, and other professionals (collectively, the "Related Parties").

Combined Plan Art. 1.118.

18.    Any creditor who votes on the Combined Plan, whether to accept it or to reject it, and who does not check an "Opt Out" box on its ballot, is deemed to have provided consent to the Third-Party Release and is a "Releasing Party." Combined Plan Art. 1.119.

## ARGUMENT[4]

### I.     The Solicitation Procedures Should Not be Approved.

19.     The Debtors' proposed solicitation procedures, including the Tabulation Procedures, creates unnecessary confusion. The Debtors propose to serve on all creditors in voting classes, whose claim has not been objected to as of May 15, 2025, the complete Solicitation Package, which will include a ballot. The ballot may have the voting amount of the claim already pre-filled by the Voting Agent. Tabulation Procedures, ¶ D.2.

20.     Nevertheless, the Debtors may continue to file objections, and any objections filed prior to Friday, May 22, 2026, up to seven days after the Solicitation Packages are served, will either reduce the voting amount of the claim (if the objection is a "reduce and allow" objection) or eliminate the right of the claimant to vote on the Combined Plan, absent a Resolution Event.

21.     Thus, creditors who were served with a Solicitation Package, informing them that they are in a voting class and soliciting their vote on the Combined Plan, may not actually be permitted to vote.

22.     If a claim is objected to between May 15 and May 22, the Debtors will then serve the holder of such claim a modified Notice of Non-Voting Status. The proposed modifications are not included in the Solicitation Motion. Service of such notice could be provided as late as Friday, May 22.

23.     A party receiving such a notice who wishes to vote on the plan must file a motion to temporarily allow its claim by Friday, May 29. Since Monday, May 25 is a federal holiday, that provides only four business days from service of the notice to the deadline to file a 3018 motion. Since service is complete upon mailing, and mail can be delivered several days later (especially

---

[4]     The U.S. Trustee reserves all rights to object to confirmation of the Debtors' Plan.

with an intervening federal holiday), creditors will likely have significantly less than four business days from the date of receipt of the notice (if any time) to file a 3018 motion.

24.     Parties, including the Debtors, who wish to object to a 3018 motion have until June 12 to file an objection.  Thus, the Tabulation Procedures provide objection parties with two weeks, and ten business days, to prepare and file their objections. Importantly, the Debtors will receive CM/ECF notification of the 3018 motion immediately upon its filing, providing the full two-week period to respond.

25.     This procedure is fundamentally unfair. First, it creates unnecessary confusion – a creditor is first informed that it is entitled to vote its full claim amount. The creditor will later receive a notice informing that its right to vote has been eliminated, and that any vote already cast will not be counted.[5] Even a clear notice that explains in simple terms that the creditor's right to vote has been eliminated creates confusion, especially to parties unfamiliar with bankruptcy law and procedure and, by extension, what "temporary allowance" is. The Solicitation Motion, however, does not include the proposed revisions to the Notice of Non-Voting Status, and thus its clarity has not been tested.

26.     Second, the procedures provide grossly insufficient time for a creditor to respond. An affected creditor will have less than four business days' notice of the need to file a 3018 Motion. During this brief time, the creditor must (a) review the notice and comprehend that its claim is no longer entitled to vote; (b) determine that it wishes to seek permission to vote its claim; (c) retain counsel; and (d) prepare, file and serve the motion. By contrast, the Debtors (who are aware that such a motion may be coming, as they were the parties who filed the objection to the claim), are given a full two weeks to respond.

---

[5]     It is not clear whether a ballot returned by such a creditor that did not "opt out" of the release will be considered deemed acceptance of the releases, or if the creditor will not be deemed a "Releasing Party."

27. The bar date to file proofs of claim expired on April 6, 2026. D.I. 156. By May 15 (the date solicitation packages will be served), the Debtors will have had over a month to review the claims to determine if an objection is warranted.

28. The Debtors nevertheless seek an additional seven days to object to claims. The Debtors should ensure that all objections to claims that they wish to file in time to impact a creditors' voting rights be on file prior to May 15. Creditors whose voting rights are eliminated or who are proposed to be given a right to vote in an amount less than the total claimed amount (through a "reduce and allow" objection) should only be served with one notice that clearly informs them of their voting rights. The seven additional days to file objections only creates confusion and provides insufficient notice to creditors to permit them to preserve their right to vote.

29. Alternatively, if the Debtors require the additional seven days to complete their claims review process, they should seek a confirmation hearing date that would accommodate a solicitation process that does not negatively impact their creditors. A hearing date one week later than currently scheduled would permit the Debtors to complete their claims review, file all objections, and solicit the Combined Plan in a meaningful way, providing creditors with clear notice and sufficient time to protect their rights.

## II. The Plan Is Not Confirmable Because It Includes Non-Consensual Third-Party Releases

30. If a plan is patently unconfirmable on its face, the application to approve the disclosure statement must be denied. *See In re Quigley Co.*, 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007) (citing *In re Beyond.com Corp.,* 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003)); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y.) aff'd, 147 B.R. 827 (E.D.N.Y. 1992); *In re Filex, Inc.*, 116 B.R. 37, 41 (Bankr. S.D.N.Y. 1990)). Here, the Plan is not confirmable because it includes non-consensual third-party releases.

31.     The Supreme Court held in *Harrington v. Purdue Pharma L.P.* that bankruptcy courts cannot involuntarily alter relationships between non-debtors by imposing nonconsensual releases of, or injunctions barring, claims between them.  603 U.S. 204, 209, 227 (2024).  The Court did not prohibit chapter 11 plans from memorializing consensual third-party releases, and it did not "express a view on what qualifies as a consensual release." *Id*. at 226.

32.     A consensual third-party release is a separate agreement between non-debtors governed by nonbankruptcy law.  As the Supreme Court recognized in *Purdue*, a release is a type of settlement agreement.  *Purdue*, 603 U.S. at 223 (explaining that what the Sacklers sought was not "a traditional release" because "settlements are, by definition, consensual") (cleaned up).  A bankruptcy court can acknowledge the parties' agreement to a third-party release, but the authority for a consensual release is the agreement itself, not the Bankruptcy Code.  If a claim has been extinguished by virtue of the agreement of the parties, then the court is not using the forcible authority of the Bankruptcy Code or the bankruptcy court to extinguish the property right.

33.     Here, there is no existing release agreement between non-debtors.  The Debtor instead seeks to confirm a plan that would use the power of the court to impose a third-party release on claimants without their affirmative and voluntary consent.  Such a confirmation order would impermissibly alter the relations between non-debtors because a valid release does not exist under nonbankruptcy law.

### A.     State Contract Law Applies

34.     "[T]he basic federal rule in bankruptcy is that state law governs the substance of claims." *Travelers Cas. & Sur. Co. of America v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-451 (2007) (cleaned up); *accord Butner v. United States*, 440 U.S. 48 (1979).  Thus, courts apply state law when the question is whether a debtor has entered a valid settlement agreement. *See Houston*

*v. Holder (In re Omni Video, Inc.)*, 60 F.3d 230, 232 (5th Cir. 1995) ("Federal bankruptcy law fails to address the validity of settlements and this gap should be filled by state law."); *De La Fuente v. Wells Fargo Bank, N.A. (In re De La Fuente)*, 409 B.R. 842, 845 (Bankr. S.D. Tex. 2009) ("Where the United States is not a party, it is well established that settlement agreements in pending bankruptcy cases are considered contract matters governed by state law.").

36.     The rule is no different for third-party releases.  They are separate agreements between non-debtors governed by state law.  Unlike a bankruptcy discharge, which "is an involuntary release by operation of law," "[i]n the case of voluntary releases, the nondebtor is released from a debt, not by virtue of 11 U.S.C. § 1141(b), but because the *creditor agrees to do so*." *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 503, 507 (Bankr. D.N.J. 1997) (emphasis in original); *see also Continental Airlines Corp. v. Air Line Pilots Assn., Int'l (In re Continental Airlines Corp.)*, 907 F.2d 1500, 1508 (5th Cir. 1990) (holding that for settlement provisions "unrelated to substantive provisions of the Bankruptcy Code," "the settlement itself is the source of the bankruptcy court's authority").  Thus, "the Bankruptcy Code has not altered the contractual obligations of third parties, the parties themselves have so agreed." *Arrowmill*, 211 B.R. at 507.

36.     Because the Bankruptcy Code does not authorize the imposition of an involuntary release, *Purdue*, 603 U.S. at 209, 227, the release must be consensual under non-bankruptcy law.  There is no Bankruptcy Code provision that preempts otherwise applicable state contract law governing releases between non-debtors.  *See, e.g., Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 416 (2010) (plurality) ("For where neither the Constitution, a treaty, nor a statute provides the rule of decision or authorizes a federal court to supply one, 'state law must govern because there can be no other law.'") (quoting *Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965)); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the

11

Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). Section 105(a), for example, "serves only to carry out authorities expressly conferred elsewhere in the code." *Purdue*, 603 U.S. at 216 n.2 (quotation marks omitted). But the Code does not confer any authority to impose a release of claims between non-debtors that would not be valid under state law. The Bankruptcy Code does not define a "consensual release." *See* 11 U.S.C. § 101. "There is no rule that specifies an 'opt out' mechanism or a 'deemed consent' mechanism" for third-party releases in chapter 11 plans. *In re Chassix Holdings, Inc.*, 533 B.R. 64, 78 (Bankr. S.D.N.Y. 2015). And no Code provision authorizes bankruptcy courts to deem a non-debtor to have consented to release claims against other non-debtors where such consent would not exist as a matter of state law.

37.     Some courts have held that federal rather than state law applies to determine whether a third-party release is consensual.[6] But because there is no applicable Code provision, whether a non-debtor has consented to release another non-debtor is not, as one court concluded, a "matter of federal bankruptcy law." *In re Spirit Airlines, Inc.*, 689 B.R. 689, 716-19 (Bankr. S.D.N.Y. 2025).; *see also In re Robertshaw US Holding Corp.*, 662 B.R. 300, 323 (Bankr. S.D. Tex. 2024) (relying on caselaw in the district rather than any provision of the Bankruptcy Code). Absent express authority in the Code, federal courts cannot simply make up their own rules for when parties have given up property rights by releasing claims. Bankruptcy courts cannot "create substantive rights that are otherwise unavailable under applicable law," nor do they possess a "roving commission to do equity." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (quotation omitted). Indeed, nearly a hundred years ago, the Supreme Court rejected

---

[6]     One court recently found that the releases are not consensual under either State or Federal law, and therefore it is not necessary to decide whether federal or state law controls. *In re Gol Linhas Aereas Inteligentes S.A.,* 675 B.R. 125, 2025 WL 3456675, 130 (S.D.N.Y. Dec. 1, 2025).

the notion that federal courts can displace state law as "an unconstitutional assumption of powers by the Courts of the United States which no lapse of time or respectable array of opinion should make us hesitate to correct." *Erie*, 304 U.S. at 79 (cleaned up); *accord Rodriquez v. FDIC*, 589 U.S. 132, 133 (2020) (holding state law applies to determine allocation of federal tax refund resulting from consolidated tax return). Courts thus may not invent their own rule for when parties may be "deemed" to have given up property rights by releasing claims.

38.     Accordingly, state-law contract principles govern whether a third-party release is consensual. *See, e.g.*, *Patterson v. Mahwah Bergen Ret. Grp., Inc.,* 636 B.R. 641, 684-85 (E.D. Va. 2022) (describing bankruptcy courts in the District of New Jersey as "look[ing] to the principles of contract law rather than the bankruptcy court's confirmation authority to conclude that the validity of the releases requires affirmative consent"); *In re Smallhold, Inc.*, 665 B.R. 704, 720 (Bankr. D. Del. 2024) (recognizing that "some sort of affirmative expression of consent that would be sufficient as a matter of contract law" is required); *In re SunEdison, Inc.,* 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017) ("Courts generally apply contract principles in deciding whether a creditor consents to a third-party release."); *Arrowmill*, 211 B.R. at 506, 507 (explaining that a third-party release "is no different from any other settlement or contract" and thus "the validity of the release . . . hinge[s] upon principles of straight contract law or quasi-contract law rather than upon the bankruptcy court's confirmation order") (internal quotation marks omitted) (alterations in original). Because "'nothing in the bankruptcy code contemplates (much less authorizes it)' . . . any proposal for a non-debtor release is an ancillary offer that becomes a contract upon acceptance and consent." *In re Tonawanda Coke Corp.*, 662 B.R. 220, 222 (Bankr. W.D.N.Y. 2024) (quoting *Purdue*, 603 U.S. at 223). And "any such consensual agreement would be governed by state law." *Id.*

13

39.     Even if federal law applied, however, it would not lead to a different result.  That is because "federal contract law is largely indistinguishable from general contract principles under state common law."  *Young v. BP Expl. & Prod., Inc. (In re Deepwater Horizon)*, 786 F.3d 344, 354 (5th Cir 2015) (cleaned up); *see also Deville v. United States*, 202 F. App'x 761, 763 n.3 (5th Cir. 2006) ("The federal law that governs whether a contract exists 'uses the core principles of the common law of contracts that are in force in most states.' . . . These core principles can be derived from the Restatements.") (quoting *Smith v. United States*, 328 F.3d 760, 767 n.8 (5th Cir. 2003)).

## B.      Under State Law, Silence Is Not Acceptance

40.     The Debtors bear the burden to prove that their plan is confirmable.  *In re American Cap. Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012).  Under Delaware law, like in other states, an agreement to release claims—like any other contract—requires a manifestation of assent to that agreement.  *See, e.g.*, Restatement (Second) of Contracts § 17(1) ("[T]he formation of a contract requires a bargain in which there is manifestation of mutual assent to the exchange and a consideration."); *In re Hertz Corp.*, 120 F.4th 1181, 1192 (3d Cir. 2024) ("Contract law does not bind parties to promises they did not make."); *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1229 (Del. 2018) ("Under Delaware law, overt manifestation of assent . . . controls the formation of a contract.") (cleaned up); *see also In re Gol Linhas*, 2025 WL 3456675, at *5 ("Looking to the Restatement (Second) of Contracts for guidance, the New York Court of Appeals has 'repeatedly' held that 'a binding contract requires an objective manifestation of mutual assent, through words or conduct, to the essential terms of the agreement.'").

41.     Thus, "[o]rdinarily[,] an offeror does not have power to cause the silence of the offeree to operate as acceptance."  Restatement (Second) of Contracts § 69 cmt. a (1981); *accord* 1 Corbin on Contracts § 3.19 (2018); 4 Williston on Contracts § 6:67 (4th ed.); *see also Reichert*

14

*v. Rapid Investments, Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) ("[T]he offeror cannot prescribe conditions so as to turn silence into acceptance."); *Jacques v. Solomon & Solomon P.C.*, 886 F. Supp. 2d 429, 433 n.3 (D. Del. 2012) ("Merely sending an unsolicited offer does not impose upon the party receiving it any duty to speak or deprive the party of its privilege of remaining silent without accepting."); *Elfar v. Wilmington Trust, N.A.*, No. 20-0273, 2020 WL 7074609, at *2 n.3 (E.D. Cal. Dec. 3, 2020) ("The court is aware of no jurisdiction whose contract law construes silence as acceptance of an offer, as the general rule."), *adopted by* 2020 WL 1700778, at *1 (E.D. Cal. Feb. 11, 2021).

42.    There are only very limited exceptions to the "general rule of contracts . . . that silence cannot manifest consent." *Patterson*, 636 B.R. at 686; *see also, e.g.*, *McGurn v. Bell Microproducts, Inc.*, 284 F.3d 86, 90 (1st Cir. 2002) (recognizing "general rule" that "silence in response to an offer . . . does not constitute acceptance of the offer"). "[T]he exceptional cases where silence is acceptance fall into two main classes: those where the offeree silently takes offered benefits, and those where one party relies on the other party's manifestation of intention that silence may operate as acceptance. Even in those cases the contract may be unenforceable under the Statute of Frauds." Restatement (Second) of Contracts § 69 cmt. a.

43.    But absent such extraordinary circumstances, "[t]he mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction or impose on him any duty to speak." *Id.* And "[t]he mere fact that an offeror states that silence will constitute acceptance does not deprive the offeree of his privilege to remain silent without accepting." *Id.* § 69, cmt. c; *see also Patterson*, 636 B.R. at 686 (explaining how contract law does not support deeming consent based upon a failure to opt out); *Jacques*, 886 F. Supp. 2d at 433 n.3.

15

**C.      Failing to Opt Out Does Not Provide the Required Affirmative Consent**

44.      Debtors' plan imposes the Third-Party Release on any creditor who votes on the plan, either accepting or rejecting it, who do not also check an opt-out box. In other words, Debtors purport to impose an otherwise non-existent duty to speak on claimants regarding the offer to release non-debtors, and their silence—the failure to opt out—is "deemed" consent.  But under black-letter law that silence is not acceptance of the offer to release non-debtors. *See, e.g.*, *Patterson*, 636 B.R. at 688 ("Whether the Court labels these 'nonconsensual' or based on 'implied consent' matters not, because in either case there is a lack of sufficient affirmation of consent.").

45.      A case from the Ninth Circuit illustrates the point.  In *Norcia v. Samsung Telecom. Am., LLC*, 845 F.3d 1279, 1286 (9th Cir. 2017), cited with approval by the Third Circuit in *Noble v. Samsung Elec. Am., Inc.*, 682 F. App'x 113, 117-118 (3d Cir. 2017), and the Fifth Circuit in *Imperial Ind. Supply Co. v. Thomas*, 825 F. App'x 204, 207 (5th Cir. 2020), the court held that a failure to opt out did not constitute consent to an arbitration agreement.  A consumer bought a Samsung phone and signed the Verizon Wireless Customer Agreement. *Norcia*, 845 F.3d at 1282.  The phone came with a Samsung warranty brochure that contained an arbitration provision but gave purchasers the ability to opt out of it without affecting the warranty coverage. *Id*.  The customer did not opt out. *Id*.  When the customer later sued Samsung, Samsung argued that the arbitration provision applied. *Id*. at 1282-83.

46.      The Ninth Circuit in *Norcia* held that the customer's failure to opt out did not constitute consent to arbitrate.  The court applied the "general rule," applicable under California law, that "silence or inaction does not constitute acceptance of an offer." *Norcia*, 845 F.3d at 1284 (quotation marks omitted).  The customer did not agree to arbitrate because he did not "sign the

16

brochure or otherwise act in a manner that would show his intent to use his silence, or failure to opt out, as a means of accepting the arbitration agreement." *Norcia*, 845 F.3d at 1285 (quotation marks omitted). This was true, even though the customer *did* take action to accept the offered contract from Verizon Wireless. "Samsung's offer to arbitrate all disputes with [the customer] cannot be turned into an agreement because the person to whom it is made or sent makes no reply, even though the offer states that silence will be taken as consent, unless an exception to this general rule applies." *Id*. at 1286 (quotation marks and citation omitted).

47.     The Ninth Circuit held that none of the exceptions to this rule applied. *Norcia*, 845 F.3d at 1284-85. There was no state law imposing a duty on the customer to act in response to the offer, the parties did not have a prior course of dealing that might impose such a duty, and the customer did not retain any benefits by failing to act given that the warranty applied whether or not he opted out of the arbitration provision. *Id*. at 1286.

48.     Here, too, the Debtors' creditors have not signed an agreement to release the non-debtor releasees nor acted in any other manner to suggest that their silence manifests an intention to accept an offer to release the non-debtors.

**D.     Voting on a Plan Plus a Failure to Opt Out Does Not Manifest Consent to a Non-Debtor Release**

49.     Voting to accept a plan without checking an opt-out box does not constitute the affirmative consent necessary to reflect acceptance of an offer to enter a contract to release claims against non-debtors. *See* Restatement (Second) of Contracts § 69 cmt. a (1981). Voting to approve a plan plus a failure to opt out of a third-party release is nothing more than silence with respect to the offer to release claims against non-debtors. The act of voting on a chapter 11 plan without opting out is not conduct that "manifest[s] [an] intention that silence may operate as acceptance" of a proposal that the creditor release claims against non-debtors. Restatement

(Second) of Contracts § 69 cmt. a. Impaired creditors have a federal right under the Bankruptcy Code to vote on a chapter 11 plan. 11 U.S.C. § 1126(a). Merely exercising that right does not manifest consent to release claims against non-debtors.

50.    Even more obviously, those who vote to reject the plan are not consenting to third-party releases by failing to mark an opt-out box. Not only is there no "mutual agreement" as to the plan, much less the third-party release, the creditor has expressly stated its rejection of the plan. As the court in *In re Chassix Holdings, Inc.*, reasoned: "[A] creditor who votes to reject a plan should also be presumed to have rejected the proposed third-party releases that are set forth in the plan. *The additional 'opt out' requirement, in the context of this case, would have been little more than a Court-endorsed trap for the careless or inattentive creditor.*" 533 B.R. 64, 79 (Bankr. S.D.N.Y. 2015) (emphasis added).

E.    ***Smallhold*'s Conclusion that Voting Plus a Failure to Opt Out Equals Consent to a Non-Debtor Release Is Incorrect**

51.    This court has previously found that, in at least some circumstances, a failure to opt out constitutes consent when a claimant votes—either to accept or reject a plan—but not if they do not vote. *See Smallhold,* 665 B.R. at 723. Although stating it was applying "ordinary contract principles," *id*. at 724, the *Smallhold* decision did not correctly apply those principles to the question of when silence can constitute consent for those who vote on the plan.

52.    As an initial matter, *Smallhold* correctly recognized that a failure to opt out by those who do not vote does not constitute consent. *See Smallhold*, 665 B.R. at 721-23. *Smallhold* elucidated the point with a hypothetical: a chapter 11 plan requiring that any creditor that did not "check an 'opt out' box on a ballot . . . make a $100 contribution to the college education fund for the children of the CEO of the debtor." *Id*. at 710. As the court observed, "no court would find that in these circumstances, a creditor that never returned a ballot could properly

18

be subject to a legally enforceable obligation to make the $100 contribution." *Id*. None of the cases that allow imposing a non-debtor release based on a failure to opt out "provides any limiting principle that would distinguish the third-party release from the college education fund plan." *Id*.

53.    Contract law likewise does not support imputing consent to a third-party release based on a failure to opt-out by those who vote on the plan. Nevertheless, *Smallhold* incorrectly reasoned that because the act of voting on a debtor's plan is an "affirmative step" taken after notice of the third-party release, failing to opt out binds the voter to the release. *Smallhold,* 665 B.R. at 717, 723-724. But while voting is an "affirmative step" with respect to the debtor's plan, it is not a "*manifestation of intention* that silence may operate as acceptance" of a third-party release. Restatement (Second) of Contracts § 69 cmt. a (1981) (emphasis added).

54.    "The mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction," Restatement (Second) of Contracts § 69 cmt. a—in this case, the federal right to vote on a chapter 11 plan. 11 U.S.C. § 1126(a). Nor does it "impose on him any duty to speak," Restatement (Second) of Contracts § 69 cmt. a, such as by checking an opt out box. Voting on a plan while failing to opt out thus cannot be equated with affirmative conduct manifesting consent to the non-debtor release. Just like the hypothetical creditors in *Smallhold* could not be forced to contribute $100 to a college fund to benefit the debtor's CEO's children merely because they failed to return a ballot with an "opt out" box, *Smallhold*, 665 B.R. at 710, creditors who cast such a ballot should not be forced to make such a contribution merely because they failed to check that "opt out" box.[78]

---

[7]    State law affords no basis to conclude that consent to release *third-party* claims (which are governed by *nonbankruptcy* law) can properly be inferred from a party's failure to check an opt-out box on a ballot expressing its views about the proposed treatment of its claims against the *debtor* (governed by *bankruptcy* law). *See supra* II.D. As a result, the "general proposition" that *Smallhold* recognized continues to apply: "creditors must *affirmatively express consent to the release* in order to be bound by it." *Id.* at 717 (emphasis added).

55.     Notably, the Ninth and Second Circuit cases cited by *Smallhold* do not support its conclusion that the act of voting on a chapter 11 plan while remaining silent regarding the non-debtor release constitutes consent. *Smallhold,* 665 B.R. at 724 n.60 (citing *Berman v. Freedom Financial Network*, 30 F.4th 849, 856 (9th Cir. 2022); *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)). Those cases emphasize that notice to the offeree is a prerequisite to consent "*regardless of apparent manifestation of his consent.*" *Meyer*, 868 F.3d at 74 (internal quotation marks omitted; emphasis added). But while notice of a contractual term is necessary for consent, notice alone is not sufficient. *See, e.g., Meyer*, 868 F.3d at 74; *Norcia*, 845 F.3d at 1284; Restatement (Second) of Contracts § 69 cmt. a. There must also be a manifestation of an intent to accept the offer. *See, e.g., Berman*, 30 F.4th at 85; *Norcia*, 845 F.3d at 1284; Restatement (Second) of Contracts § 69 cmt. a. For the reasons discussed above, the failure to opt out of the third-party release is not such a manifestation of consent.

56.     For the reasons set forth above, the Combined Plan cannot be approved for purposes of solicitation.

## **RESERVATION OF RIGHTS**

57.     The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights to (i) amend or supplement this Objection and (ii) conduct discovery.

## CONCLUSION

**WHEREFORE,** the U.S. Trustee respectfully requests that this Court issue an order

denying the Solicitation Motion and granting such other relief as this Court deems just.

Dated:  May 6, 2026
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

By:  */s/ Linda J. Casey*
    Linda J. Casey
    Trial Attorney
    United States Department of Justice
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 King Street, Suite 2207, Lockbox 35
    Wilmington, DE 19801
    (302) 573-6491 (Phone)
    Linda.Casey@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on May 5, 2026, I caused to be served a copy of this

Objection by electronic service on the registered parties via the Court's CM/ECF system and upon

the following parties via electronic mail:

Saul Ewing LLP
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Email: paige.topper@saul.com
        nicholas.smargiassi@saul.com

Saul Ewing LLP
1888 Century Park East, Suite 1500
Los Angeles, CA 90067
Email: zev.shechtman@saul.com

Morris James LLP
3205 Avenue North Blvd., Suite 100
Wilmington, DE 19803
Email: emonzo@morrisjames.com
        scerra@morrisjames.com

Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, NY 10020
Email: jcohen@lowenstein.com
        gfinizio@lowenstein.com
        jrauchberg@lowenstein..com

*/s/ Linda J. Casey*
Linda J. Casey